FILED
2012 Jul-27  PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| HUBERT E. WOODARD, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 6:11-cv-00494-LSC |
| | ) | |
| TOWN OF OAKMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiffs Hubert E. Woodard, Jr., Jack Smith, and Ronnie Phillips filed the above-entitled action against the Town of Oakman, Joyce Todd, Leon Welch, and John Wilson in the Circuit Court of Walker County, Alabama, on December 31, 2010, alleging violations of their Fourth, Fifth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 ("§ 1983"), as well as malicious prosecution, defamation, and wrongful termination under Alabama law.  The action was removed to this Court on February 11, 2011 (Doc. 1), and Defendants moved to dismiss (Docs. 5, 6).  In response to Defendants' motions to dismiss, Plaintiffs filed an Amended Complaint. (Doc. 12.)  The Court struck the Amended Complaint for failure to follow Federal

Rule of Civil Procedure 15(a).  (Doc. 15.)

After consultation with the Court and opposing counsel, Plaintiffs filed an opposed motion for leave to file a "Second Amended Complaint."[1]  (Doc. 23.) Plaintiffs conceded their prior complaint "lacked sufficient recitation of facts to support the Fourth and Fourteenth Amendment issues that were co-mingled with other claims which made it difficult for the parties to properly respond."  (*Id*. ¶ 4.) Plaintiffs also acknowledged the prior complaint "did not set forth the causes of action in a specific manner or with clarity to each claim."  (*Id*. ¶ 5.)  Defendants then filed "motions to dismiss," which addressed the claims in the *proposed* "Second Amended Complaint" attached as an exhibit to Plaintiffs' motion.  (Docs. 27, 28.)  The Court again consulted with the parties and determined that it would grant Plaintiffs leave to file their proposed "Second Amended Complaint."  The Court informed the parties that it would construe Defendants' pending "motions to dismiss" as motions to dismiss the Second Amended Complaint after it was filed.

However, when Plaintiffs filed their "Second Amended Complaint," they did not file the document reviewed by the Court and attached as an exhibit to their motion for leave.  Instead, Plaintiffs "updat[ed] factual matter" (Doc. 59 ¶ 3) by adding two

---

[1]The proposed "Second Amended Complaint" differed substantially from the "Amended Complaint" (Doc. 12) struck by the Court.

footnotes.  The Court denied Defendants' motion to strike the amended complaint, but deemed the earlier-filed "motions to dismiss" as moot and informed Defendants they were free to file motions to dismiss the Second Amended Complaint and incorporate previous arguments if they determined no further argument was necessary.  (Docket Order, February 16, 2012.)  In the Second Amended Complaint, Plaintiffs contend that Defendants[2] are liable for violations of their First, Fourth, and Fourteenth Amendment rights under § 1983; conspiracy in violation of § 1983 and 42 U.S.C. § 1985; violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.;* as well as false arrest, outrage, and wrongful termination.  Defendants' motions to dismiss the Second Amended Complaint (Docs. 70, 82) are currently before the Court.[3]  The issues raised in Defendants' motions

---

[2]Joyce Todd, Leon Welch, and John Wilson are sued in their individual capacities only. (Doc. 57 ¶¶ 7-9; Doc. 84 at 5-6.)

[3]Plaintiffs' Motion to Strike Defendants' Motions to Dismiss (Doc. 73) is DENIED.  There is no support for Plaintiffs' assertion that the Second Amended Complaint is a Rule 15(d) supplement and Defendants are prohibited from making new arguments in support of dismissal unless the new arguments relate to the two footnotes Plaintiffs added to the proposed complaint. Plaintiffs chose to file a Second Amended Complaint that differed from the proposed complaint that was reviewed and approved for filing by the Court.  Instead of striking the document, the Court granted Defendants leave to refile their motions to dismiss.  The Court did not restrict Defendants from making new arguments for dismissal.

To the extent Plaintiffs' Motion to Strike requests leave to file a "Third Amended Complaint," the request is DENIED.  The governing complaint in this action is the fourth version submitted by the Plaintiffs.  Plaintiffs are aware of the legal standards for dismissal and have had several opportunities to refine and restate the facts alleged in the complaint.  Moreover, Plaintiffs do not submit a proposed "Third Amended Complaint," so the Court cannot assess the sufficiency of any new allegations.  *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir.2005) ("The

have been fully briefed[4] by the parties and are ripe for decision. Upon full consideration and for the reasons stated herein, Defendants' motions will be granted in part and denied in part.

## II. Background.

Plaintiff Hubert Woodard was hired by the Police Department of the Town of Oakman, Alabama ("Oakman"), in October 2008 as a law enforcement officer. (Doc. 57 ¶ 10.) In or around September 2009, Hubert Woodard ("Chief Woodard") was appointed Police Chief of Oakman by the Mayor and Town Council. (*Id.*) At all times relevant to this action, Joyce Todd ("Mayor Todd") was Mayor of Oakman and Leon Welch ("Magistrate Welch") was magistrate for the Oakman Municipal Court. (*Id.* ¶¶ 7, 9.)

According to Plaintiffs, Chief Woodard sought to remove one of his part time officers, Nancy Kirkland ("Kirkland"). (*Id.* ¶ 14.) Although Chief Woodard's efforts were supported by several members of the Oakman City Council, Mayor Todd

---

district court . . . need not allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." (quotation marks omitted)).

[4]Defendant John Wilson filed a motion to strike Plaintiffs' amended opposition to dismissal. (Doc. 85.) Wilson argues that Plaintiffs were only permitted to respond to the amended motion to dismiss filed by the other defendants. Wilson's motion is DENIED. Plaintiffs filed a single, responsive submission addressing the amended arguments of the other defendants and re-stating their arguments in opposition to Wilson's motion to dismiss. There is no basis for striking the document.

opposed Chief Woodard's actions because she was a personal friend of Kirkland. Plaintiffs contend that Mayor Todd publicly attacked the members of the City Council who supported Kirkland's removal.  Specifically, Plaintiffs allege that Mayor Todd publicized negative information and documents about City Council member Patricia Blackwell, the sister of Plaintiff Jack Smith ("Smith"), also a City Council member. (*Id.*)

Because the documents about Patricia Blackwell contained unredacted personal information, Chief Woodard investigated their disbursement.  (*Id.* ¶ 15.)  Chief Woodard uncovered Mayor Todd's involvement in distributing the documents and disclosed that information to the City Council, "infuriating" Mayor Todd.  (*Id.*) When Mayor Todd tried to force Chief Woodard into keeping Kirkland on the police roster, he asked the City Council if he could meet with the City Attorney about Kirkland.  (*Id.* ¶ 16.)  Plaintiffs contend that Mayor Todd retaliated against Chief Woodard for his speech to the City Council and criticism of her actions by seeking to terminate his employment. (*Id.*)  She changed the locks on his office doors on July 15, 2010, and handed him a letter at a City Council meeting on July 19, 2010, which sought to place him on leave. (*Id.*)  Chief Woodard read Mayor Todd's letter out loud to the Council "along with other matters concerning the Town of Oakman."  (*Id.*)

At some point,[5] Chief Woodard was arrested for interference with governmental operations, disorderly conduct, and theft. (*Id.* ¶ 17.) Plaintiffs contend that Magistrate Welch directed Defendant John Wilson, a private citizen, to sign sham warrant complaints as "acting police chief" and issued the warrant in "retaliation for Woodard's speech and investigation of the Mayor." (*Id.*)  In a footnote, Plaintiffs maintain that Wilson's name was "alleged to be forged" on "one of the warrant complaints," but they do not indicate whether the name was actually forged, who made the allegations, or when the allegations were made. (*Id.* ¶ 17 n.1.)  Regardless, Plaintiffs conclude that "Wilson knowingly served forged arrest warrants." (*Id.*)

Per Plaintiffs, Mayor Todd and Magistrate Welch exerted an "unusual degree of involvement" in day-to-day operations of the local court system and Police Department. (*Id.* ¶ 13.) Plaintiffs contend that Mayor Todd and Magistrate Welch "facilitate[d] each other's wishes for complete political control over activities in Oakman." (*Id.*)  Plaintiffs allege that Chief Woodard's arrest was effected without probable cause. (*Id.* ¶ 17.)  An announcement of Chief Woodard's arrest was published, with his photograph, in the local "Just Busted" newspaper. (*Id.* ¶ 19.) Ultimately, Oakman abandoned the charges against Chief Woodard. (*Id.* ¶ 22.)

---

[5]Plaintiffs do not provide a date.

Chief Woodard hired Plaintiff Ronnie Phillips ("Officer Phillips") as a patrol officer in or around July 2009. (*Id*. ¶ 11.) Officer Phillips made a traffic stop on May 1, 2010, and Kirkland was a passenger in that vehicle. (*Id*. ¶ 24.) According to Plaintiffs, Mayor Todd "appeared and intervened" in the traffic stop. (*Id*.) Mayor Todd then sought to terminate Officer Phillips' employment based on the alleged mishandling of a traffic ticket six months prior. (*Id*. ¶ 25.) Plaintiffs contend that Magistrate Welch objected to Officer Phillips voiding a traffic ticket. (*Id*.) Chief Woodard investigated the incident and sought an opinion from the League of Municipalities attorney on the issue. According to Plaintiffs, the attorney advised Chief Woodard that Officer Phillips handled the traffic ticket appropriately. (*Id*.)

At some point,[6] Mayor Todd complained to the Mayor of Adamsville that police officers were being employed by both towns part time. (*Id*. ¶ 26.) Officer Phillips had been employed by both Adamsville and Oakman. Plaintiffs contend that because of Mayor Todd's complaints, Officer Phillips employment with Adamsville was terminated. (*Id*.)

At some unidentified time, Officer Phillips "voic[ed] his support for the professional performance of Chief Woodward's [sic] police duties and the public

---

[6]Again, no date is provided.

safety of the Town of Oakman." (*Id*. ¶ 27.)  Officer Phillips was later arrested on September 20, 2010, for interference with governmental operations. (*Id*.)  Plaintiffs again contend that a sham complaint was signed by Wilson at the direction of Magistrate Welch.  Magistrate Welch then opposed the city prosecutor making an "independent determination of the validity of the charges" and "insisted that the charges for which the arrests were accomplished by prosecuted." (*Id*. ¶ 28.) Ultimately, the charge was dismissed by the Circuit Court. (*Id*. ¶ 29 n.2.)

At some unknown time, City Council member Smith told the Chairman of the Water Board something "to the effect that any funds that had been co-mingled with the municipal court money should be released only with a court order, so as to provide protection against any allegations of mis-appropriation of funds." (*Id*. ¶ 30.)  On or around September 11, 2010, Magistrate Welch issued a warrant for Smith's arrest for interference with governmental operations based solely on this alleged statement. (*Id*.)  Smith was arrested and detained overnight.  His arrest was published in the "Just Busted" newspaper. (*Id*. ¶ 32.)  Later, Smith was acquitted on the charges. (*Id*. ¶ 30 n.3.)

III.    Standard.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"[7]   *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn

---

[7]Plaintiffs and Defendant Wilson reference numerous additional facts in their briefs that are not included in the complaint at issue. The law is clear that the Court is limited to the factual allegations in the complaint and attached exhibits. *See Speaker v. U.S. Dept of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("[I]t is generally true that the scope of the review must be limited to the four corners of the complaint.") Plaintiffs quote *Pegram v. Herdrich*, 530 U.S. 211 (2000), as saying: "The facts alleged in a Plaintiff's briefs may be considered so long as the brief's allegations are consistent with the complaint." (Doc. 84 at 2.) This quote does NOT appear in *Pegram*. In *Pegram*, the Supreme Court stated that it may use a plaintiff's brief "to clarify allegations in her complaint whose meaning is unclear." 530 U.S. at 230 n.10. Specifically, in *Pegram*, the Supreme Court used the plaintiff's brief to clarify that the plaintiff was not making an ERISA claim for fiduciary breach by reference to eligibility determinations or administrative decisions separate from medical judgments, despite a "vague statement" that made it appear otherwise. *Id.* at 230. There is no law in this Circuit that a plaintiff may prevent dismissal for failure to state a claim by adding additional facts in his/her briefs, so long as they are "consistent" with the complaint. The Court rejects all new factual assertions in both Plaintiffs' and Wilson's briefs.

in favor of the plaintiff.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations omitted).[8]  The plaintiff must plead "enough facts to state a claim that is plausible on its face."  *Id.* at 570.  Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed."  *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."  *Dalrymple v. Reno*, 334 F.3d 991,

---

[8]In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957).  *Bell Atl. Corp.*, 550 U.S. at 560-63.  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 563.

996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).  And, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1951-52).  However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

IV.    Discussion.

Defendants have moved to dismiss Plaintiffs' entire action for failure to state a claim.  In the course of briefing, Plaintiffs concede that their punitive damages claim against Oakman is due to be dismissed.  (Doc. 76 at 1.)  Plaintiffs also state that they are not pursuing a RICO claim, despite reference to the statute in the "Fifth Cause of Action" in the Second Amended Complaint.  (*Id.*; Doc. 57 ¶ 45.)  Accordingly, the RICO claim will be dismissed.  The Court turns, then, to Plaintiffs' § 1983 claims and state law causes of action.

A.    Section 1983.

In order to maintain a § 1983 action, "the conduct complained of must have been committed by a person acting under color of state law and must result in a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *Scott v. Dixon*, 720 F.2d 1542, 1545 (11th Cir. 1983), *Brown v. Miller*, 631 F.2d 408, 410 (5th Cir. 1980)).  Mayor Todd, Magistrate Welch, and Wilson are sued in their individual capacities.  "Qualified immunity protects government officials sued in their individual capacities as long as their conduct does not violate 'clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Smith ex. rel. Smith v. Siegelman*, 322 F.3d 1290, 1294 (11th Circ. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)). "The qualified immunity defense may be raised and addressed on a motion to dismiss, and will be granted if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Id.* (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

Plaintiffs also sue the Town of Oakman. "A municipality may be held liable under § 1983 if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 690-94 (1978). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id.* (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* (citing *Monell*, 436 U.S. at 690-91). "[M]unicipal liability also may be based on a claim of inadequate training 'where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants [such that the failure to

train] can be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Id*. at 489-90 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

      1.    First Amendment.

Plaintiffs each contend that Defendants retaliated against them for exercising their right to free speech under the First Amendment. Specifically, Chief Woodard alleges that Mayor Todd retaliated against him by changing the locks on his office doors and giving him a letter seeking to place him on leave after he spoke to the City Council "in an effort to get their support for his performance of his job duties." (Doc. 57 ¶ 16.) Chief Woodard also asserts that Magistrate Welch directed Wilson to sign a complaint and issued an arrest warrant for interference with governmental operations, disorderly conduct, and theft after Chief Woodard read Mayor Todd's letter out loud to the City Council. Officer Phillips contends that Mayor Todd and Magistrate Welch "had him arrested" after he voiced his support for the professional performance of Chief Woodard. (*Id*. ¶ 27.) And, Smith maintains that Magistrate Welch issued a warrant for his arrest for interference with governmental operations after Smith told the Chairman of the Water Board that funds co-mingled with municipal court money should be released only with a court order in order to provide protection from allegations of fund misappropriation. (*Id*. ¶¶ 30.)

In order to establish a First Amendment retaliation claim, a plaintiff must establish "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Keeton v. Anderson-Wiley*, 664 F.3d 865, 878 (11th Cir. 2011) (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).  The parties do not dispute that causing an individual to be arrested adversely affects the speech in question. Therefore, the Court turns to whether there are sufficient facts in the complaint to establish that Plaintiffs' speech was constitutionally protected and that there is a causal connection between Defendants' alleged retaliatory actions and the adverse effect on speech.

a.   Protected Speech.

Defendants argue that Plaintiffs' purported speech is not protected under the First Amendment because they are public employees and they did not speak as "citizens" on matters of public concern.  "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1281 (11th Cir. 2009).  Therefore, in order "[t]o state a claim that a government employer took disciplinary action in retaliation

for constitutionally protected speech, a public employee must prove, as a threshold matter, that the employee "'spoke as a citizen on a matter of public concern.'" *Id.* at 1281-82. When speech is "made pursuant to an employee's job duties as 'speech that owes its existence to a public employee's professional responsibilities,'" an employee is not speaking as a citizen for First Amendment purposes. *Id.* at 1283.

Considering the "content, form, and content" of Chief Woodard's purported speech to the City Council prior to being locked out of his office on July 15, 2010, Chief Woodard was not acting as a citizen for First Amendment purposes— at least as far as he attempts to make a claim that Mayor Todd attempted to terminate his employment and/or place him on leave. (Doc. 57 ¶ 16.) Chief Woodard alleges that he was investigating the actions of one of his officers, as well as the disbursement of documents with unredacted private information. He "addressed the city council in an effort to get their support *for his performance of his job duties*." (*Id.* (emphasis added).) Specifically, he asked the City Council if he could talk with the city attorney about his police officer's actions. (*Id.*) This speech was made pursuant to Chief Woodard's responsibilities as Chief of Police, and he has no First Amendment retaliation claim for disciplinary actions taken in the employment context.

However, there is no requirement that Plaintiffs speak outside the context of their job duties in order to state a claim that Defendants caused them to be arrested based on their speech. *See, e.g.*, *Connick v. Myers*, 461 U.S. 138, 147 (1983) ("We do not suggest, however, that [Plaintiff's] speech, even if not touching upon a matter of public concern, is totally beyond the protection of the First Amendment."). Arrest is not a disciplinary action taken by an employer in order to "promot[e] the efficiency of the public services it performs through its employees." *Id*. at 142. Construing the allegations in the complaint in the light most favorable to the Plaintiffs, Chief Woodard's speech to the City Council, including discussing the results of investigations and reading Mayor Todd's letter; Officer Phillips' voicing support for Chief Woodard's performance; and Smith telling the Chairman of the Water Board that funds co-mingled with municipal court money should be released only with a court order are all instances of protected speech under the First Amendment when alleged retaliation occurs outside the employment context.

> b.    Causal Connection.

The Court turns, then, to causation. "In order to establish a causal connection [between protected speech and retaliatory actions], the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the

protected speech." *Keeton*, 664 F.3d at 878 (quoting *Castle v. Appalachian Technical College*, 631 F.3d 1194, 1197 (11th Cir. 2011)). Plaintiffs do not allege any facts showing that Wilson was subjectively motivated to take adverse actions against them because of their protected speech. There are no facts indicating Wilson was in any way involved with Smith's arrest. With regard to the arrest of Chief Woodard and Officer Phillips, Plaintiffs allege only that Welch—or Welch and Todd—directed Wilson, as "acting police chief," to sign the warrant complaints. Making all reasonable inferences in favor of the Plaintiffs, this fact is still insufficient to make a plausible claim of Wilson's subjective retaliatory motive based on protected speech. There are no facts indicating that Wilson was even aware of Plaintiffs' purported statements. Accordingly, Plaintiffs' First Amendment retaliation claims against Wilson are due to be dismissed.

Plaintiffs do not allege any facts showing that Mayor Todd had any involvement in the issuance of the warrant for, or arrest of, Chief Woodard or Smith. With regard to Officer Phillips, Plaintiffs contend only that Mayor Todd directed Wilson to sign the warrant complaint. (Doc. 57 ¶¶ 27-28.) They then make the legal conclusion that Mayor Todd "retaliated against Phillips for his speech." (*Id.*) However, there are no facts to support a plausible claim that Mayor Todd acted against Officer Phillips

because of his purported protected speech.  It is not clear that the warrant complaint included Phillips' protected statements.  In fact, it is unclear from Plaintiffs' allegations if, how, or when Mayor Todd became aware of Officer Phillips supposed speech.  Plaintiffs' First Amendment retaliation claim against Mayor Todd will also be dismissed.

Plaintiffs do allege that Magistrate Welch issued warrants for each of their arrests. However, their allegations with regard to First Amendment retaliation against both Chief Woodard and Officer Phillips are similarly conclusory.  Plaintiffs contend that Welch issued the warrants as retaliation for the protected speech of both Chief Woodard and Officer Phillips, but there are no facts indicating that the warrant complaints included the protected statements.  It is also unclear how, when, or if Magistrate Welch heard about the protected speech.  Conclusory statements of retaliatory conduct are insufficient to proffer a plausible claim of Magistrate Welch's subjective retaliatory motive based on protected speech.  Therefore, the First Amendment retaliation claims by Chief Woodard and Officer Phillips against Magistrate Welch are due to be dismissed.

Smith's First Amendment claim against Magistrate Welch, however, is different.  Smith contends that Magistrate Welch issued a warrant for his arrest and

the charge "was based solely upon" one statement made by Smith to the Chairman of the Water Board.  (*Id.* ¶ 30.)  The one statement was "to the effect that any funds that had been co-mingled with the municipal court money should be released only with a court order, so as to provide protection against any allegations of mis-appropriation of funds."  (*Id.*)  Making all reasonable inferences in favor of the Plaintiffs, Magistrate Welch issued a warrant for Smith's arrest with full knowledge of this one statement and only because of this statement.  At least in this instance, Plaintiffs' allegations of subjective motivation to take adverse action based on protected speech are "nudged . . . across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

However, "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996)).  "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id.* (citing *Stump*, 435 U.S. at 356).  "The office of magistrate is a hybrid creature, combining both clerical attributes and limited judicial attributes." *City of Bayou La Batre v. Robinson*,

785 So. 2d 1128, 1133 (Ala. 2000).  However, the "issuance of arrest warrants" falls

within the limited delegated judicial powers of a magistrate.  There are no facts from

which this Court can conclude that Magistrate Welch acted in the clear absence of all

jurisdiction when he issued the warrant for Smith's arrest.  Accordingly, Magistrate

Welch is absolutely immune from a First Amendment retaliation claim resulting from

the issuance of Smith's arrest warrant.  While "judicial immunity does not bar claims

brought under § 1983 seeking injunctive and declaratory relief," Plaintiffs only request

compensatory and punitive damages in this case. *Shuler v. Swatek*, 465 Fed. Appx. 900

at *903 (11th Cir. 2012) (citing *Pulliam v. Allen*, 466 U.S. 522, 536-37 (1984)).  Smith's

First Amendment retaliation claim against Magistrate Welch will be dismissed.

> c.   Town of Oakman.

Plaintiffs do not allege any facts showing that a "custom" or an adopted

"policy" of the Town of Oakman was the "moving force" behind any retaliation for

their First Amendment rights.  *Sewell*, 117 F.3d at 489.  However, Smith successfully

stated sufficient facts to show that Magistrate Welch took adverse action against him

based on speech protected by the First Amendment.  Defendants do not dispute that

this right is clearly established.   "The Government may not retaliate against

individuals or associations for their exercise of First Amendment rights 'by imposing

sanctions for the expression of particular views it opposes.'" *Georgia Ass'n of Educators v. Gwinnett County School Dist.*, 856 F.2d 142, 145 (11th Cir. 1988) (quoting *Smith v. Arkansas State Highway Employees*, 441 U.S. 463, 464 (1979)).  Plaintiffs contend that Oakman may be held liable for Magistrate Welch's purported wrongdoing because he is a "final policymaker" for the town.

"[A] municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991).  "Whether a particular official has final policymaking authority is a question of state law." *Id*.  Alabama Code § 12-14-51(a) provides that "magistrates shall be considered the chief officers of the municipal court administrative agency."  Magistrates are expressly delegated the authority to issue arrest warrants.  § 12-14-51(c)(1).  However, "local governments . . . can never be liable under § 1983 for the acts of those [officials] whom the local government has no authority to control." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1331 (11th Cir. 2003) (quoting *Turquitt v. Jefferson County*, 137 F.3d 1285, 1292 (11th Cir. 1998)).  Therefore, the Court must examine whether Oakman, under Alabama law, has control over the magistrates and their issuance of arrest warrants. *Id*. at 1331-32.

Under Alabama law, the municipal court administrative agency is under the supervision of the municipal court, and the magistrates are designated by the municipal court judges. *Id*. § 12-14-50.  While a municipality appoints and pays municipal judges, the jurisdiction and authority of municipal judges is generally established by state law. *Id*. § 12-14-1.  The municipal court is required to submit monthly reports to the State's Chief Examiner of Public Accounts. *Id*. 12-1-19.  If local legislation is introduced that affects the judiciary in any way, the municipality must deliver a copy of the bill to the State's Administrative Director of Courts, as well as the House and Senate Judiciary Committees, Clerk of the House of Representatives, and the Secretary of the State Senate. *Id*. § 12-1-6.  The Alabama Supreme Court, not the municipality, provides the rules for administration of the municipal court administrative agency. *Id*. 12-14-52.  In short, there is nothing to indicate that Oakman has control of a magistrate's issuance of an arrest warrant. Because Plaintiffs cannot show that Magistrate Welch is a "final policymaker" for Oakman, the Town of Oakman is not subject to § 1983 liability on Smith's First Amendment retaliation claim.

2.     Fourth Amendment.

There are no facts in the complaint that suggest any of the Defendants actually effected the arrest of the Plaintiffs. Defendants Todd and Welch moved to dismiss Plaintiffs' Fourth Amendment "unlawful arrest" claims on this basis alone. (Doc. 82 at 16.) However, Plaintiffs do not label their Fourth Amendment claims as "false arrest" or "unlawful arrest" claims. Instead, they argue that Defendants' conduct "with regard to the false arrest and unlawful search and seizure of all Plaintiffs[] without any probable cause, (and with forged arrest warrants) constitutes a violation of Plaintiffs' rights under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendment to the U.S. Constitution [sic]." (Doc. 57 ¶ 39.) "[W]e must read the allegations of the complaint to include any theory on which the plaintiffs may recover." *Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).

In the Eleventh Circuit, malicious prosecution can constitute "a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1255 (11th Cir. 2010) (quoting *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)). "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth

Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." *Id.* (quoting *Wood*, 323 F.3d at 882).

"To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Id.* (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004); *Wood*, 323 F.3d at 881). "As to the first prong, the constituent elements of the common law tort of malicious prosecution are: '(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.'" *Id.* (quoting *Wood*, 323 F.3d at 882). "As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Id.* (citations omitted).

All Plaintiffs allege that they were arrested and seized without probable cause. (Doc. 57 ¶ 39.) Chief Woodard alleges that Magistrate Welch directed Wilson to sign a sham complaint for the issuance of an arrest warrant for interference with governmental operations, disorderly conduct, and theft. (*Id.* ¶ 17.) Chief Woodard

does not allege any facts against Mayor Todd showing malicious prosecution; therefore, his Fourth Amendment Claim against Mayor Todd will be dismissed.

Although Defendants do not raise this issue, the Court must determine whether Chief Woodard alleges sufficient facts showing that the criminal proceedings allegedly instituted by Magistrate Welch and Wilson terminated in his favor.  Courts have generally reasoned that "only terminations that indicate that the accused is innocent ought to be considered favorable." *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998) (quoting *Hilfirty v. Shipman*, 91 F.3d 573, 580 (3d Cir. 1996)).  "Thus, courts have found that withdrawal of criminal charges pursuant to a compromise or agreement does not constitute favorable termination and, thus, cannot support a claim for malicious prosecution."  *Id*.  "Similarly, courts have refused to permit a finding of favorable termination where the stated basis for the dismissal of criminal charges has been in the interests of justice, or where a conviction has been reversed and the cause expressly remanded for retrial."  *Id*. at 1005 (quotations omitted).  "Consistent with each of the policies underlying the favorable termination requirement, however, courts have found favorable termination to exist by virtue of an acquittal, an order of dismissal reflecting an affirmative decision not to prosecute, a dismissal based on the running of the statute of limitations, an entry of a nolle prosequi, and, in some cases,

a granted writ of habeas corpus." *Id.* Chief Woodard asserts that the criminal charges against him were "abandoned by the City of Oakman." (Doc. 57 ¶ 22.) Making all reasonable inferences in favor of the plaintiff, it appears likely that evidence will show that the Town of Oakman made an affirmative decision not to prosecute. Accordingly, Chief Woodard has alleged sufficient facts, at this time, to show that the abandonment of charges indicates he is innocent of the charges made.

Smith alleges that Magistrate Welch issued a warrant for his arrest based solely on a statement he made to the Chairman of the Water Board and he was ultimately acquitted on that charge. (*Id.* ¶ 30 & n.3.) Acquittal clearly qualifies as a termination that indicates the innocence of the accused. Yet, Smith does not allege any facts against Mayor Todd or Wilson showing malicious prosecution; therefore, his Fourth Amendment claim against these two defendants will be dismissed.

Officer Phillips contends that Mayor Todd and Magistrate Welch both directed that Wilson sign a sham complaint for the issuance of an arrest warrant for interference with governmental operations. (*Id.* ¶¶ 27-28.) Officer Phillips maintains that the criminal charges against him were prosecuted and ultimately "dismissed" by the Circuit Court. (*Id.* ¶ 29 n.2.) Although Officer Phillips does not specify the type of dismissal entered by the Circuit Court, the Court makes all reasonable inferences

in favor of the plaintiff.  Based on the totality of the facts alleged, it appears likely that evidence will show the dismissal is one that indicates Officer Phillips is innocent of the charges made.

Plaintiffs' Fourth Amendment claims against Magistrate Welch relate to acts performed within the function of his judicial office.  *Lloyd v. Foster*, 298 Fed. Appx. 836 at *840 (citing *Stump*, 435 U.S. at 356-57).  Issuing arrest warrants clearly fall within the scope of Magistrate Welch's judicial duties.  *Robinson*, 785 So. 2d at 1133 ("This Court held that the determination of whether probable cause existed to issue a warrant is a judicial act, an act that properly affords judicial immunity.")  While directing Wilson to sign the warrant complaints would be an action "in excess of his authority," the actions are still alleged to have occurred within the scope of Magistrate Welch's judicial duties and do not qualify as action "in the clear absence of all jurisdiction."  *Id*.  Therefore, Magistrate Welch is entitled to immunity from Plaintiffs' Fourth Amendment claims.

Both Mayor Todd and Wilson have raised the defense of qualified immunity. Officer Phillips contends that Mayor Todd directed Wilson to sign a sham complaint, and Wilson signed the sham complaint, in order to secure the issuance of an arrest warrant and subsequent arrest without probable cause.  Chief Woodard maintains that

Wilson signed a sham complaint in order to effect his arrest without probable cause. Because the alleged facts show that Mayor Todd's and Wilson's actions were intentional, and there are no facts from which the Court can conclude that the signing of a sham complaint was done for a proper purpose, the Court can infer the presence of "malice" at this stage of proceedings. *Nesmith v. Alford*, 318 F.2d 110, 123 (5th Cir. 1963).[9] It is clearly established that the Constitution prohibits a government official from fabricating evidence, affidavits, or complaints in order to effect an arrest without probable cause. *See Eloy v. Guillot*, 289 Fed. Appx. 339 at *346-47 (11th Cir. 2008) (citing *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997)). Therefore, Officer Phillips' Fourth Amendment claims against Mayor Todd and Wilson, and Chief Woodard's Fourth Amendment claim against Wilson, will proceed.

With regard to the Town of Oakman, Plaintiffs have not alleged any facts showing a "custom" or an adopted "policy" was the "moving force" behind any violation of their Fourth Amendment rights. *Sewell*, 117 F.3d at 489. As discussed above, Magistrate Welch is not a "final policymaking authority" for Oakman in the area of issuing arrest warrants. Plaintiffs have also failed to proffer any facts showing that Mayor Todd or Wilson are "final policymaking authorities" in the area of signing

---

[9]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

warrant complaints or directing their signature.   Therefore, Plaintiffs' Fourth Amendment claims against Oakman will be dismissed.

        3.     Deliberate Indifference.

Plaintiffs argue that they have stated a claim for "deliberate indifference" to their rights under the Fourteenth Amendment. (Doc. 84 at 20-21.) In their response memorandum, Plaintiffs define their claim as one alleging that Oakman was deliberately indifferent to the need for increased training or supervision. (Doc. 84 at 21.) Such a "deliberate indifference" claim is really a claim that a municipality is liable under § 1983 for an employee's "constitutional injury as a result of the municipality's policy- or custom-based failure to adequately train or supervise its employees." *American Fed'n of Labor & Congress of Indus. Orgs v. City of Miami, Fla.*, 637 F.3d 1178, 1188 (11th Cir. 2011).  As discussed above, Plaintiffs have not alleged sufficient facts to show that a "custom" or an adopted "policy" was the "moving force" behind any violation of their First or Fourth Amendment rights.  *Sewell*, 117 F.3d at 489.  With regard to Plaintiffs' specific claim that a failure to train amounts to "deliberate indifference," Plaintiffs must allege sufficient facts showing that the municipality was on notice of the need to train or improve supervision and it made a

deliberate choice not to train or supervise. *American Fed. of Labor*, 637 F.3d at 1189. There are no such facts in the complaint.

Plaintiffs also seem to imply in their brief that Mayor Todd, Wilson, and Magistrate Oakman can be held individually liable for "deliberate indifference" because they "failed to take any remedial action." (Doc. 84 at 20.) The Eleventh Circuit has recognized that supervisors can be held individually liable for the constitutional violations of their employees if they had notice of the misconduct and failed to take remedial action. *See Greason v. Kemp*, 891 F.2d 829, 838 (11th Cir. 1990). The individual Defendants in this action did not supervise each other, and there are no facts alleged that would allow a reasonable jury to infer that any of the Defendants had sufficient notice or authority to effect remedial action to sustain a claim for "deliberate indifference" under the Fourteenth Amendment. For these reasons, Plaintiffs' "deliberate indifference" claims will be dismissed.

4.    Civil Conspiracy.

Plaintiffs also claim that Mayor Todd, Wilson, and Magistrate Welch are liable for conspiracy under § 1983 and 42 U.S.C. § 1985 ("§ 1985"). (Doc. 57 ¶¶ 1, 41.) Plaintiffs have not stated a claim under § 1985. "Because the first four clauses of § 1985(2) refer to conspiracies that are designed to obstruct the course of justice in

any court of the United States, plaintiffs seeking to recover under those clauses must show a nexus between the alleged conspiracy and a proceeding in federal court." *Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. Unit A Jan. 1981) (quotations omitted). "Because the last two clauses of s 1985(2) refer to conspiracies designed to deny or interfere with equal protection rights, plaintiffs seeking to recover under those clauses must show a racial or otherwise class-based discriminatory animus." *Id.* Plaintiffs do not reference any proceedings in federal court and they do not make any allegations of racial or class-based discriminatory animus. The § 1985 claim will be dismissed.

"[T]o sustain a conspiracy action under § 1983 . . . a plaintiff must show an underlying actual denial of [his] constitutional rights." *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) (quoting *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998)). As outlined above, Smith has failed to allege sufficient facts to state a constitutional violation against any Defendant except Magistrate Welch. However, as explained previously, Magistrate Welch is entitled to judicial immunity on those constitutional claims. "[E]ven a judge who is approached as a judge by a party [and conspires with such party] to violate [another party's federal constitutional rights] is properly immune from a damage suit brought under section 1983." *Dykes v. Hosemann*, 776 F.2d 942, 946 (11th Cir. 1985) (quoting

*Harper v. Merckle*, 638 F.2d 848, 856 n.9 (5th Cir. Unit B March 1981)); *see also Gottschalk v. Gottschalk*, 2011 WL 2420020 at *7 (11th Cir. 2011).  Magistrate Welch is immune from any conspiracy claims stemming from the alleged constitutional violations in this case.  Smith's claim for conspiracy under § 1983, therefore, must be dismissed.

Chief Woodard and Officer Phillips have only stated claims for violation of their Fourth Amendment rights.  "A plaintiff claiming a § 1983 conspiracy must prove the defendants 'reached an understanding' to violate the plaintiff's constitutional rights." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (quoting *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement.")).  "Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence."  *Id.* (citing *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992)).  Officer Phillips alleges that Mayor Todd and Magistrate Welch directed Wilson to sign a sham complaint, and Wilson did so, in order to initiate prosecution for interference with governmental operations.  Chief Woodard contends that Magistrate Welch directed Wilson to sign a sham complaint, and Wilson did so, in order to effect a criminal prosecution.  A reasonable jury could plausibly infer from these communications that Mayor Todd,

Magistrate Welch, and Wilson had an understanding to violate Officer Phillips' constitutional rights, and Magistrate Welch and Wilson had an understanding to violate Chief Woodard's constitutional rights.  Officer Phillips and Chief Woodard allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the requisite elements" of their claims.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007).[10]   While a conspiracy claim is prohibited against Magistrate Welch due to judicial immunity, Officer Phillips' § 1983 conspiracy claim against Mayor Todd and Wilson will proceed, and Chief Woodard may pursue his § 1983 claim against Wilson.  Because Chief Woodard has not alleged any facts establishing that Mayor Todd conspired to violate his Fourth Amendment rights, his § 1983 conspiracy claim against her will be dismissed.

---

[10]Although Defendants have not raised this argument, the Court notes that a conspiracy claim might be defeated if Mayor Todd and Wilson both worked for Oakman at the time of the alleged violation.  The Eleventh Circuit has held that the intracorporate conspiracy doctrine, under which "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves," applies to "public entities such as the City and its personnel." *Grider*, 618 F.3d 1240, 1261 (11th Cir. 2010).  However, Plaintiffs allege in the complaint that when Wilson signed the warrant complaint against Officer Phillips, Wilson "was not even employed by the city of Oakman" (Doc. 57 ¶ 28), and when he signed the warrant complaint against Chief Woodard, he "was a private citizen" (*Id*. ¶ 20).  Defendants also fail to argue or establish that ordering an individual to sign a warrant complaint is within the scope of a mayor's job duties.

B.     State Law Actions.

1.     Malicious Prosecution.

Plaintiffs sued Mayor Todd, Magistrate Welch, and Wilson for "false arrest" under Alabama law.  (Doc. 57 ¶ 47.)  Plaintiffs now argue that their claim should be construed as one for malicious prosecution.  Again, the Court "must read the allegations of the complaint to include any theory on which the plaintiffs may recover."  *Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).

In Alabama, the elements for a malicious prosecution claim are: "(1) institution or continuation of an original judicial proceeding, either civil or criminal; (2) by or at the instance of the defendant; (3) termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) injury or damage as the result of the prosecution's complaint." *Kroger Co. v. Puckett*, 351 So. 2d 582, 585 (Ala. Civ. App. 1977).

As previously discussed in the context of Plaintiffs' Fourth Amendment claims, all Plaintiffs sufficiently allege that they were arrested and seized without probable cause. (Doc. 57 ¶ 39.) Chief Woodard alleges that Magistrate Welch directed Wilson to sign a sham complaint for the issuance of an arrest warrant for interference with

governmental operations, disorderly conduct, and theft. (*Id.* ¶ 17.) Chief Woodard does not allege any facts against Mayor Todd showing malicious prosecution; therefore, a state law malicious prosecution claim against Mayor Todd must be dismissed.

Alabama law is more generous than Eleventh Circuit precedent on what constitutes termination of criminal proceedings in the plaintiff's favor. *See Kroger Co.*, 351 So. 2d at 585-86 ("A number of courts in other jurisdictions have taken the view that the criminal proceeding against the accused must have terminated in a manner consistent with the innocence of the accused rather than on the basis of a procedural or technical defect. But this is not the rule in Alabama. . . . It is enough that the proceeding is terminated in such a manner that it cannot be revived and the prosecutor, if he proceeds further, will be put to a new prosecution. This is true, for example, of a discharge by a magistrate at a preliminary hearing because the evidence produced against the accused is not sufficient to warrant his being held for further proceedings to determine his guilt or innocence; the refusal of a grand jury to indict; the formal abandonment of the criminal proceeding by a public prosecutor by an entry of a nolle prosequi; the quashing of an indictment or information by a person of proper authority; or a final order by a trial or appellate court which precludes the bringing of

further proceedings against the accused in the particular matter before the court. ")
(quotations omitted).   Under Alabama law, Chief Woodard's assertion that the
criminal charges against him were "abandoned by the City of Oakman" (Doc. 57 ¶ 22)
is clearly sufficient to raise a reasonable expectation that discovery will show that
criminal proceedings were terminated in his favor.

Smith alleges that Magistrate Welch issued a warrant for his arrest based solely
on a statement he made to the Chairman of the Water Board and he was ultimately
acquitted on that charge.  (*Id.* ¶ 30 & n.3.)  As noted in the Court's earlier discussion,
Smith does not allege any facts against Mayor Todd or Wilson showing malicious
prosecution; therefore, his state law malicious prosecution claim against these two
defendants will be dismissed.

Officer Phillips contends that Mayor Todd and Magistrate Welch both directed
that Wilson sign a sham complaint for the issuance of an arrest warrant for
interference with governmental operations. (*Id.* ¶¶ 27-28.) Officer Phillips maintains
that the criminal charges against him were prosecuted and ultimately "dismissed" by
the Circuit Court.  (*Id.* ¶ 29 n.2.)

As with their constitutional claims, Plaintiffs' malicious prosecution claims
against Magistrate Welch relate to acts performed within the function of his judicial

office.  Under federal law, Magistrate Welch is entitled to judicial immunity from damages, even if his actions are malicious.  *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000).  Under Alabama law, "a judge of a court of limited jurisdiction" is immune only if he "acts in good faith."  *Bahakel v. Tate*, 503 So. 2d 837, 839 (Ala. 1987).  The Court cannot infer good faith from any of the facts alleged in the complaint.

Instead, the alleged facts show that Mayor Todd, Wilson, and Welch intentionally directed the signing of sham complaints, signed sham complaints, issued warrants based on complaints known to be shams, and/or issued a warrant based solely on disagreement with an individual's speech without any proper purpose. Such conduct is sufficient to establish "malice" for purposes of a malicious prosecution claim. *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133, 140 (Ala. 1983) ("Any other motive than a bona fide purpose to bring the accused to punishment as a violator of the criminal law or another purpose associated with such bona fide purpose is malicious.") And, such conduct is sufficient, at this point in the proceedings, to defeat a state-agent, peace-officer, or judicial immunity defense. *Ex parte Auburn Univ.*, 6 So. 3d 478, 490 (Ala. 2008) (state agent); *Hollis v. City of Brighton*, 950 So. 2d 300, 305 (Ala. 2006) (peace-officer); *Bahakel*, 503 So. 2d at 839 (judicial immunity for

magistrates).  Accordingly, Chief Woodard's malicious prosecution claim will proceed against Wilson and Magistrate Welch; Officer Phillips' malicious prosecution claim will continue against Wilson, Mayor Todd, and Magistrate Welch; and Smith's malicious prosecution claim will remain against Magistrate Welch.

2.      Intentional Infliction of Emotional Distress.

All Plaintiffs have sued all Defendants for intentional infliction of emotional distress or outrage under Alabama law.  The Alabama Supreme Court describes the tort of outrage as follows:

> The emotional distress caused by the defendant's conduct must be so severe that no reasonable person could be expected to endure it. . . . By extreme, we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal citations and quotations omitted).  Moreover, "[t]he tort of outrage is an extremely limited cause of action." *Id*.  "It is so limited that [the Alabama Supreme Court] has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment."  *Id*. (internal citations omitted).  The purported misconduct

alleged in the complaint does not meet these high standards.  Plaintiffs' claims for intentional infliction of emotional distress will be dismissed.

        3.      Wrongful Termination.

Finally, Chief Woodard and Officer Phillips sue Mayor Todd and Oakman for terminating their employment as police officers "without a hearing under Ala. Code § 11-43-230." (Doc. 57 ¶ 52.)  Defendants do not move to dismiss Officer Phillips' claim.  (Doc. 82 at 26.)  Defendants only argue that Chief Woodard cannot maintain a termination claim because he alleged in the original complaint that "the council voted not to sustain Woodard's termination." (*Id.*)  The original complaint has since been amended, and this factual assertion does not appear in the governing complaint at issue.  In the complaint before this Court, Chief Woodard alleges that he was deprived of his employment without due process of law.  (Doc. 57 ¶¶ 21, 52.)  These are the allegations that have to be addressed by the Defendants and they did not do so.

Plaintiffs, however, have not established how Mayor Todd can be held individually liable for their termination.  Alabama Code § 11-43-230 provides that "[e]very municipality shall provide a predisciplinary hearing prior to the suspension or termination of its law enforcement officers . . . ."  Because Mayor Todd was not Chief Woodard or Officer Phillip's employer and she had no obligation under the law

to provide a due process hearing, their wrongful termination claims against Mayor Todd in her individual capacity will be dismissed.  Chief Woodard's and Officer Phillip's wrongful termination claims against Oakman will proceed.

V.    Conclusion.

For the reasons outlined above, Defendants' motions to dismiss will be granted in part and denied in part.  A separate order will be entered.

Done this 27th day of July 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297