FILED

2013 Sep-10  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| HUBERT E. WOODARD, et al., | ) | |
| | ) | |
| Plaintiffs; | ) | |
| | ) | |
| vs. | ) | 6:11-cv-00494-LSC |
| | ) | |
| TOWN OF OAKMAN, | ) | |
| ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION

### I.  Introduction

Plaintiffs Hubert E. Woodard, Jr., Jack Smith, and Ronnie Phillips filed the above-entitled action against the Town of Oakman, Joyce Todd, Leon Welch, and John Wilson in the Circuit Court of Walker County, Alabama, on December 31, 2010. The action was removed to this Court on February 11, 2011. (Doc. 1.) Plaintiffs filed a Second Amended Complaint on January 14, 2012, alleging violations of their First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 ("§ 1983"); conspiracy in violation of § 1983 and 42 U.S.C. § 1985; violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; as well

as state law claims for malicious prosecution,[1] outrage, and violation of due process rights under Ala. Code § 11-43-230 (i.e., wrongful termination without a disciplinary hearing). Defendants subsequently moved to dismiss all counts of Plaintiffs' Second Amended Complaint. (Docs. 70, 82.)

On July 27, 2012, this Court entered an Order (Doc. 88) granting in part and denying in part Defendants' motions to dismiss. Plaintiffs later filed a Third Amended Complaint. (Doc. 113). Pursuant to the Court's order (Doc. 88), the following claims remain pending at this time:

Hubert Woodard has claims against John Wilson for violations of his Fourth Amendment rights and for conspiracy under § 1983, as well as a state law claim for malicious prosecution. Woodard also has pending a state law malicious prosecution claim against Leon Welch, and a state law due process violation claim against the Town of Oakman.

Ronnie Phillips has claims against Joyce Todd and John Wilson for violations of his Fourth Amendment rights and for conspiracy under § 1983. Phillips also has pending a state law claim for malicious prosecution against Leon Welch, Joyce Todd,

---

[1] Plaintiffs' malicious prosecution claim was described in the Second Amended Complaint as a claim for "the State law tort of false arrest." (Doc. 57 ¶ 47.) However, Plaintiffs later contended their claim should be construed as one for malicious prosecution (Doc. 84 at 21–22), and the Court agreed to read the claim accordingly. (Doc. 87 at 35.)

and John Wilson.[2]

Jack Smith has a state law claim for malicious prosecution pending against Leon Welch.

The Defendants have each moved for summary judgment with respect to all pending claims. (Docs. 194, 195, 196, 197, 198, 199, 200). The issues raised in Defendants' motions have been fully briefed by the parties and are ripe for decision. Defendants have also moved to strike five of Plaintiffs' evidentiary submissions. (Docs. 206, 210).

For the reasons stated herein, Defendants' motions will be granted in part and denied in part.

## II.   Facts

Defendant Joyce Todd ("Todd") was the duly elected Mayor of Defendant Town of Oakman, Alabama ("Town" or "Oakman"), at all times relevant to this case. (Doc. 194 at 13; Doc. 209 at 6, 9). Plaintiff Jack Smith ("Smith") was a duly elected city council member at all times relevant to this case. (Doc. 189 at 3). In July 2009, Todd appointed Plaintiff Hubert Woodard ("Woodard") to the position of

---

[2] The Court's order on Defendants' motions to dismiss (Doc. 88) permitted Phillips to proceed with a claim against the Town of Oakman for violation of his due process rights. However, Phillips subsequently dismissed his due process claim during discovery. (Doc. 169.)

Oakman's police chief. (Doc. 189 at 3.). Plaintiff Ronnie Phillips ("Phillips") was hired as an Oakman police officer in December 2009. (*Id.*).

The Town thereafter entered a period of dysfunction. Phillips acknowledges that on February 7, 2010, he voided a traffic ticket that he had issued to Johnny Martin on February 5, 2010, before it was sworn to a magistrate. (Doc. 209 at 11). Defendant Leon Welch ("Welch") was the magistrate at this time. (Doc. 196-1 at 3; Doc. 209 at 12). Welch and Todd asked Phillips to re-issue the ticket, and Phillips declined to do so after consulting with Woodard. (Doc. 209 at 12). Phillips alleges that Woodard had received an opinion from the Alabama League of Municipalities stating that the ticket was properly voided. (*Id.*).

At some point in the summer of 2010, Todd sought to remove Woodard from his job as police chief.[3] The date of Woodard's actual termination and the scope of his due process hearing are disputed by the parties. Woodard acknowledges that he attended city council meetings relating both to his status with the Town and the Town's dysfunction on July 19, 2010, and August 16, 2010. (Doc. 190-1 at 231-232; Doc. 190-1 at 358).

---

[3] Woodard states that the locks on his office door had been changed when he came to work on July 15, 2010. (Doc. 209 at 15). Both parties acknowledge that Woodard received a written letter of termination on or around August 2, 2010. (Doc. 209 at 19; Doc. 195 at 6).

Todd hired Defendant John Wilson ("Wilson") as the Town's chief of police on July 22, 2010, and rehired Welch as the Town's magistrate on July 26, 2010. (Doc. 189 at 3).

Ultimately, a series of arrests form the central allegations in this case. On August 27, 2010, Woodard was arrested on charges of obstruction of government operations,[4] theft of property, and disorderly conduct. (Doc. 189 at 4). On September 11, 2010, Smith was arrested on a charge of obstructing government operations, and Phillips was arrested on September 20, 2010, for improperly disposing of a traffic citation. (*Id.*) Wilson arrested each Plaintiff pursuant to a warrant that was issued by Welch based on a complaint by Wilson.[5] (Doc. 209 at 21-22).

Each Plaintiff was thereafter tried in Oakman's Municipal Court. Smith was acquitted. (Doc. 189 at 4). Phillips was found guilty in Municipal Court, but his case was dismissed after it was appealed to Walker County Circuit Court. (*Id.* at 4-5). Woodard's case was also appealed to Walker County Circuit Court. (*Id.* at 5). His charges were subsequently dismissed. (*Id.*).

## III.   Motions to Strike

---

[4] The parties also sometimes refer to this charge as "interference" or "interfering" with government operations. (Doc. 209 at 20). The Court reads these terms interchangeably.

[5] Smith suggests that his arrest warrant may not have been actually signed by Wilson. (Doc. 209 at 21 n.3).

The Court first considers Defendants' motion to strike Plaintiffs' exhibits 1-5 in order to determine the makeup of the record for purposes of ruling on the motions for summary judgment.

Affidavits or declarations "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "'Evidence inadmissible at trial cannot be used to avoid summary judgment.'" *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) (quoting *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 661 (5th Cir. 1976)).[6] Thus, the Court analyzes each evidentiary submission accordingly.

## A.    Plaintiffs' Exhibit One

Plaintiffs included in their response to summary judgment an affidavit from Patricia Smith Blackwell ("Ms. Blackwell") marked as "Plaintiffs' Supplemental Production of Documents #1." (Doc. 209-1). Defendants have moved to strike the affidavit, arguing that the statements are either hearsay or irrelevant. (Doc. 206 at 9).

---

[6] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Wright v. Farouk Systems, Inc.*, 701 F.3d 907, 910 (11th Cir. 2012); *see also* Fed. R. Evid. 801(c). Hearsay is generally inadmissible unless a federal statute, the Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802. With few exceptions, inadmissible hearsay cannot be used to support or oppose a motion for summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322-1323 (11th Cir. 1999).

Evidence must also be relevant to be admissible. Fed. R. Evid. 402. Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Here, much of Ms. Blackwell's affidavit relates to information that is clearly irrelevant to the remaining claims.[7] Only one portion of the affidavit arguably relates to the claims in this action. Ms. Blackwell states in her affidavit that in late 2009 or early 2010, "Joyce Todd called me and wanted me to go over and talk to Leon Welch. I said I wasn't going and she said she was coming to get me and she took me to Leon

---

[7] For example, several paragraphs discuss Ms. Blackwell's personal information that had been distributed to others in Oakman. Other portions involve a proposed settlement agreement and information about the arrest of Plaintiff Jack Smith. The Court does not consider portions relating to Smith because the claims against him will be remanded pursuant to Part IV(D)(i), *infra*.

Welch's office and Leon said 'it is either me' or 'Boo Woodard (the police chief) and his girlfriend.' I told Leon I was not going to be a part of getting rid of another police officer." (Doc. 209-1).

Although Defendants argue that this statement is inadmissible hearsay, the Court need not consider that argument as Ms. Blackwell's affidavit is irrelevant to Plaintiffs' remaining claims. The only remaining claims against Todd relate to Phillips's arrest. Phillips is not mentioned in the affidavit, only Woodard and Smith. Similarly, Woodard's remaining claims involve Wilson's conduct, and Wilson is not mentioned in the affidavit.[8] Thus, the affidavit will be excluded for purposes of considering the motions for summary judgment.

## B.    Plaintiffs' Exhibits Two and Three

Plaintiffs also submitted in their response to the motions for summary judgment two affidavits that Defendants contend are expert testimony.  One affidavit from attorney Deb Capps, listed as "Plaintiffs' Supplemental Production of Document[s] #2," discusses the arrests of Phillips, Smith, and Woodard. (Doc. 209-2). The second affidavit from Eric House, a police officer, describes what Plaintiffs claim is the proper

---

[8] The state law claims against Defendant Welch will be remanded to State Court.  *See* Part IV(D)(i)(b), *infra*. The Court expresses no opinion as to whether the affidavit might be relevant to this claim.

procedure to void a traffic citation. (Doc. 209-3). This affidavit is marked as "Plaintiffs' Supplemental Production of Document[s] #3." (*Id.*). Defendants argue that both affidavits should be stricken as an attempt to provide expert testimony after the discovery disclosure deadlines have passed. (Doc. 206).

Parties are required to disclose the identity of any experts they may use at trial and must provide a written report to the opposing party containing information about the expert's testimony.  Fed. R. Civ. P. 26(a)(2)(A) & (B). These reports must be made at the time ordered by the Court.  Fed. R. Civ. P. 26(a)(2)(D); *see also Corwin*, 475 F.3d at 1252. A district court has broad discretion to exclude expert testimony when a party fails to comply with its deadlines. *See Reese v. Herbert*, 527 F.3d 1253, 1264-1265 (11th Cir. 2008) (finding that district court did not abuse its discretion in excluding the affidavit of an expert where the report was submitted seven weeks after expiration of the discovery period).

Here, the Court set the deadline for the disclosure of Plaintiffs' experts as January 2, 2013. (Doc. 112). Plaintiffs' affidavits were dated May 24, 2013, nearly five months after the passage of the deadline, and there is nothing to indicate that Plaintiffs complied with the expert disclosure requirement prior to that date. As both affidavits seek to provide expert opinions, they will be excluded for the failure of Plaintiffs to

comply with the disclosure requirements.

The Eleventh Circuit has cautioned district courts to be "vigilant in ensuring that the reliability requirements set forth in Rule 702 not be evaded through the simple expedient of proffering an expert in lay witness clothing." *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011) (internal quotations and citations omitted). A lay witness is only allowed to offer opinion testimony if it is based on a witness' perception, is helpful to determining a fact in issue, and is not based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Witnesses offering opinions based on specialized knowledge are experts and must be subject to the requirements of Rule 702.

Ms. Capps states that she has "no reason to provide this affidavit other than as an officer of the Court with expert degree of personal training and experience regarding the operation of Alabama Municipal Courts." (Doc. 205-2). Ms. Capps repeatedly states her opinions as to the powers of magistrate judges and the availability of probable cause in the arrests in this case. (*Id.*) She states expressly: "I was not personally involved in any way with the events" in Oakman in the summer of 2010. (*Id.*).

Mr. House states that the information in his affidavit "is based on the training

provided for law enforcement officers in the State of Alabama." (*Id.*). His affidavit focuses on the magistrate's powers and a police officer's duties. (*Id.*).  He provides no testimony based on things he personally observed or perceived with regard to this case. (*Id.*).

Both affidavits are properly characterized as expert testimony, and the Court therefore will strike them from the record and exclude them from its consideration of the summary judgment motions below.

### C.    Plaintiffs' Exhibit Four

Plaintiffs offer an affidavit by Katlyn Smith, marked as "Plaintiffs' Supplemental Production of Document[s] #4." (Doc. 209-4). Defendants move to strike this affidavit as hearsay. (Docs. 206, 210). It pertains entirely to the facts and circumstances surrounding the arrest of Plaintiff Smith. (Doc. 209-4). The Court can find no citation to this exhibit in Plaintiffs' response to Defendants' motions for summary judgment. (Doc. 209). As such, it is irrelevant to the matters before the Court and thus is due to be stricken.

### D.    Plaintiffs' Exhibit Five

Finally, Plaintiffs offer a transcript of an audio recording of a conversation between Wilson and Welch as "Plaintiffs' Supplemental Production of Document[s]

#5." (Doc. 209-5). Defendants move to strike the audio recording on the basis that they did not receive a full copy. (Docs. 206, 210).

While it is unclear to the Court whether Defendants have full access to this transcript, Todd responds to it in her reply brief supporting summary judgment. (Doc. 214 at 7). Plaintiffs also contend that the audio recordings in question were provided by Wilson prior to a deposition. (Doc. 212 at 3). The Court will not strike the transcript.

## IV.    Defendants' Motions for Summary Judgment

Todd, Welch, Wilson, and Oakman have moved for summary judgment on all remaining claims in the action. The Court now considers these motions, and they are due to be granted in part and denied in part.

### A.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of America, NA*, - - - F.3d - - - -, 2013 WL 3853175 at *3 (11th Cir. 2013). There is a

"genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

## B.    Section 1983 Claims

Phillips and Woodard argue that their arrests were without probable cause in violation of their constitutional rights. (Doc. 113 ¶¶ 21, 29, 44). Todd and Wilson, on

the other hand, contend that they had probable cause for the arrests, and alternatively that they are protected by qualified immunity. (Docs. 194, 199, 200).

Section 1983 provides a remedy for violations of protected constitutional rights. *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010). Arrest without probable cause constitutes a violation of the Fourth Amendment. *Id.*

The Supreme Court has interpreted the language of the Warrant Clause of the Fourth Amendment to require "the affiant's good faith as its premise." *Franks v. Delaware*, 438 U.S. 154, 164, 98 S. Ct. 2674, 2681 (1978). False statements made deliberately or recklessly in an affidavit for an arrest impair a magistrate's ability to independently determine probable cause. *Id.* at 165. Similarly, the Supreme Court has required officers to use "reasonable professional judgment" when applying for a warrant, and they cannot rely on a magistrate's issuance of a warrant if a reasonable officer would know the warrant lacks probable cause. *Malley v. Briggs*, 475 U.S. 335, 346, 106 S. Ct. 1092, 1098 (1986).

The Eleventh Circuit has allowed a § 1983 action to proceed where an officer "submit[s] an application for an arrest warrant that contains false information." *Holmes v. Kucynda*, 321 F. 3d 1069, 1083 (11th Cir. 2003). In such cases, the false statement must be a deliberate or reckless act on the part of the officer. *Kingsland v.*

*City of Miami*, 382 F.3d 1220, 1233 (11th Cir. 2004).

As this Court stated in ruling on Defendants' motions to dismiss, these Plaintiffs assert malicious prosecution claims under § 1983. A malicious prosecution claim under § 1983 requires the plaintiff to prove the elements of the common law tort of malicious prosecution and a Fourth Amendment violation. *Id.* at 1234. The elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (internal quotations omitted) (quoting *Wood v. Kesler*, 323 F.3d 872, 882). The Fourth Amendment prong of the § 1983 malicious prosecution claim requires an arrest or prosecution without probable cause. *Id.* Thus, "the existence of probable cause defeats a § 1983 malicious prosecution claim." *Id.* (Citing *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008).

Probable cause requires "'facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id.* at 1257 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S. Ct. 854, 862 (1975)). "Probable cause may exist based on the collective knowledge of law

enforcement officials derived from reasonably trustworthy information." *Id.*

### i.    Phillips's Claims Against Wilson and Todd

Phillips maintains his § 1983 claim against both Todd and Wilson on the theory that each played a role in initiating his arrest without probable cause. (Doc. 113 ¶¶ 29, 32). Both Defendants have moved for summary judgment on the ground that there was probable cause to arrest Phillips. (Docs. 194, 200). Since both claims and both motions for summary judgment are based on Phillips's arrest, the Court evaluates their motions together.

It is undisputed that Phillips was arrested and prosecuted for contempt of court based on his alleged violation of Ala. Code § 12-12-56(a), by improperly disposing of a traffic citation.[9] The Alabama Code provides that "[n]o law enforcement officer...shall dispose of a uniform traffic ticket and complaint or any portion thereof or the record of issuance thereof in a manner other than as required under rules or regulations promulgated pursuant to this subsection." Ala. Code § 12-12-56(a). Another subsection notes that an individual may be "subject to the criminal contempt power of the district or municipal court." Ala. Code § 12-12-56(b).

---

[9] Phillips, in his response to the motions on summary judgment, opposes the idea that the arrests were made in good faith or with probable cause. (Doc. 209 at 8). However, Phillips cites no evidence that the charge was based on any other statutes. Instead, Phillips's complaint acknowledges the statute and alleges that he complied with it. (Doc. 113 ¶ 29).

The Alabama Rules of Judicial Administration provide the administrative regulations for issuance of traffic tickets. Ala. R. Jud. Admin. 19, Comment. Rule 19 unambiguously requires a law enforcement officer issuing a ticket to present it to a magistrate. It states: "Each law enforcement officer issuing a ticket shall complete and sign the ticket, serve a copy of the completed ticket upon the defendant and, without unnecessary delay, normally within 48 hours, acknowledge under oath the facts alleged therein before any person within the judicial branch of government who is authorized by the State of Alabama to administer oaths and file the court [sic] copies of the ticket with the court having jurisdiction over the alleged offense." Ala. R. Jud. Admin. 19(A)(6)(a)(i).

The reasonable reading of this statute and its accompanying regulations is that a law enforcement officer cannot void a ticket once it has been issued. Once a ticket has been issued to an individual, the law enforcement officer must take the ticket before a local official and swear to it in a reasonable time. Further, Phillips cites no statutes or regulations as evidence that he properly voided the citation.[10] More importantly, he affirmatively admits that he voided the citation in question after it had

---

[10] Phillips, in his complaint, alleges that he complied with the statute, "as covered by UTC Form 14." (Doc. 113 ¶ 29). However, UTC Form 14 provides no option to mark a ticket as voided. Ala. R. Jud. Admin. app. B. The only provision applying to voided tickets is Appendix F, which explicitly applies only to "Parking Tickets." *See* Ala. R. Jud. Admin. app. F. Neither form provides any description of *when* a ticket may be voided.

been given to the defendant driver. (Doc. 209 at 11). He also admits that Todd and Welch became aware of him voiding the citation and asked him to re-issue it, but he declined to do so. (*Id.* at 12).

Phillips's primary argument is that he relied on a legal opinion Woodard sought from an attorney with the Alabama League of Municipalities (the "League"). (Doc. 209 at 12). This argument fails to defeat probable cause. The League is a non-government entity that offers informal opinions to local officials. Even assuming that the League provided an opinion blessing Phillips's actions, this does not contradict the plain meaning of the statute. Mistake of law is no defense to a crime in Alabama. *Ex parte Tuscaloosa County*, 770 So. 2d 602, 605 (Ala. 2000). Additionally, with regard to criminal liability, there is no "defense to one who relies on an administrative ruling, an attorney general's opinion, or an interpretation of law by another government official." *Id.*

Since Phillips fails to provide any statutory evidence that he complied with Alabama law in voiding the traffic ticket, a reasonable officer could believe that Phillips could be prosecuted under the statute. Wilson's investigation also revealed enough facts for a reasonable officer to believe that Phillips had voided the ticket.

Phillips cites to portions of Wilson's deposition where Wilson states that he

personally spoke with Phillips, and Phillips confessed to voiding the ticket as a favor. (Doc. 209 at 8; Doc. 190-8 at 300). Phillips also cites to Wilson's statement in his deposition that Welch provided him with a folder containing information about the voided ticket, which is reasonable, given that magistrates are accountable for traffic tickets. Ala. Code § 12-14-51(c)(4). Thus, Officer Phillips's admission that he voided the ticket, coupled with the other findings, demonstrates that probable cause existed to arrest Phillips.

Phillips's final argument is that the Court should consider Wilson's subjective motives in judging his conduct. (Doc. 209 at 25). However, probable cause is a purely objective inquiry. *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997). Based on the underlying statute and facts, a reasonable officer in Wilson's position would believe there was probable cause to arrest Phillips for contempt of court in improperly voiding the traffic citation.

Todd is likewise entitled to summary judgment because there was probable cause to arrest Phillips. His § 1983 claim against Todd alleges that she played some role in orchestrating his arrest for voiding the traffic ticket. (Doc. 113 ¶ 29). Even if Todd had ordered Wilson to arrest Phillips, the arrest was supported by probable cause. Wilson and Todd are entitled to summary judgment on Phillips's § 1983

claim.[11]

### ii.    Woodard's Claims Against Wilson

Woodard was arrested on charges of disorderly conduct, obstruction of government operations, and theft of property. (Doc. 189 at 3-4). Wilson moves for summary judgment, arguing that all three arrests are supported by probable cause and alternatively that he is entitled to qualified immunity. (Doc. 200). This motion is due to be granted in part and denied in part.

The Court will deny summary judgment as to Woodard's arrest on charges of disorderly conduct and obstruction of government operations. These charges stem from Woodard's conduct at a public meeting. The date of the meeting is currently disputed–Woodard claims that the charges stemmed in part from a July 19, 2010, council meeting (Doc. 209 at 20), and Wilson claims that the charges stemmed from an August 16, 2010, council meeting. (Doc. 217 at 14). For purposes of the summary judgment motions, the meeting date is irrelevant because there is evidence in the record allowing a reasonable jury to conclude that Woodard was not disruptive on either occasion.

First, the Court notes that Woodard, like Phillips, relies in part on advice he

---

[11] Upon finding that there was actual probable cause, the Court does not decide the issue of whether Todd and Wilson are entitled to qualified immunity on this claim.

claims that he received from the League. (Doc. 190-1 at 15-16). However, unlike Phillips's claims, Woodard also provides direct testimony that he was not disruptive at either meeting. Woodard states in his deposition that he was not belligerent at either the July 19 or August 16 council meetings.  As to the July 19 council meeting, Woodard denies reacting angrily to recent public events or being asked to leave by any officials at the meeting. (Doc. 190-1 at 237-238). Woodard also consistently denies that he was in any way disruptive at the August 16 council meeting. (Doc. 190-1 at 15-19). He also denies that Wilson asked him to leave the meeting. (*Id.* at 154).

Defendant Wilson rebuts this claim with his own evidence that Woodard was belligerent at the August 16 council meeting.[12] This rebuttal only creates, and does not resolve, a dispute as to this material fact. Thus, a reasonable jury could believe Woodard's version of the events and find that Woodard was not disorderly. The complaint for Woodard's arrest is based entirely on Wilson's testimony. (Doc. 190-12 at 2-3). The jury could infer that Wilson's affidavit was intentionally or recklessly fabricated, constituting a violation of Woodard's constitutional rights.

The Court also rejects Wilson's alternative argument that he is entitled to

---

[12] Wilson fails to provide citations to the record on these claims in his motion for summary judgment. (Doc. 200 at 14). However, the Court reviewed the record and finds evidence supporting Wilson's position in his complaint against Woodard. (Doc. 190-11 at 2-3).

qualified immunity. In order to assert qualified immunity, a government official must first show that he was engaged in a discretionary function. *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010). Wilson rightly indicates that it is now undisputed that he was hired as police chief on July 22, 2010. (Doc. 189 at 3). However, Wilson never clearly indicates that the complaints or arrests fell within his discretionary authority.[13] (Doc. 200). Defendant Wilson's motion merely asserts that he is entitled to qualified immunity. (Doc. 200 at 16).

However, even if the Court were to find that Wilson acted within his discretion, he would still not be entitled to qualified immunity protection at this stage in the litigation. In arrest cases, a defendant receives qualified immunity if he had "arguable probable cause" to make the arrest. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013). Arguable probable cause exists if "'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" *Grider*, 618 F. 3d at 1257 (quoting *Kingsland*, 382 F. 3d at 1232).

A jury could find that Wilson lacked arguable probable cause to arrest Woodard.

---

[13] The Court notes that areas like searches and seizures are commonly considered within the discretionary authority of the police officer. *Holloman ex. Rel. Holloman v. Harland*, 370 F. 3d 1252, 1266 (11th Cir. 2004).

If a jury believes Woodard, it would conclude that he was not disruptive at either meeting, on July 19 or August 16. The jury could also believe Wilson's statement that he attended the August 16 meeting. (Doc. 190-9 at 3). Thus, the jury could find that Wilson actually *knew* that Woodard was not disruptive at the August 16 meeting, yet swore out complaints for his arrest anyway. No reasonable officer could believe he has probable cause to arrest when he personally observes the absence of a crime yet later swears to a magistrate that a crime occurred. Drawing all reasonable inferences in favor of Woodard, Wilson lacked either actual or arguable probable cause to arrest Woodard on the disorderly conduct and obstruction of government operations charges.

Summary judgment is due to be granted as to the arrest on the theft claim. Although Woodard repeatedly refers to the charge simply as "theft," Woodard was charged specifically with theft of property, third degree.[14] Thus, the Court must determine whether there are any disputed facts as to probable cause to arrest on this charge.

Alabama law classifies theft of property in the third degree as "[t]he theft of

---

[14] Woodard in his brief cites to a December 2011 order dismissing the charges against him. (Doc. 209 at 8). This order is included and marked as "Exhibit # 8" to Woodard's brief in response to summary judgment. (*Id.*). That order states that the charge was "Theft of Property 3rd Degree." (*Id.*). Woodard also states in his deposition that he was arrested for theft of property, third degree. (Doc. 190-1 at 11). Thus, the Court treats the theft charge as theft of property, third degree.

property which does not exceed five hundred dollars ($500) in value and which is not taken from the person of another." Ala. Code § 13A-8-5(a). The term "theft of property" is a term of art defined to punish a number of acts, including a person who "[k]nowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his or her property." Ala. Code § 13A-8-2(1). The term "deprive" is also a term of art, defined to include any act "[t]o withhold property or cause it to be withheld from a person permanently or for such period or under such circumstances that all or a portion of its use or benefit would be lost to him or her." Ala. Code § 13A-8-1(2)(a).

Wilson had probable cause to arrest Woodard on this charge. Woodard admitted at his deposition, and he does not dispute in his motion for summary judgment, that he kept possession of "the chief's computer and the chief's phone." (Doc. 190-1 at 142). He also acknowledges that Woodard received a letter from Todd terminating him as police chief. (Doc. 209 at 19). In that letter, Todd states that "you still have possession of property belonging to the Town that I have ordered that you return[,] and you continue in your refusal to do so." (Doc. 190-19 at 2).

Woodard argues that there was a lack of probable cause because he had been instructed by an individual with the League to keep the computer and phone. (Doc.

190, at 20).[15] Even assuming that an individual with the League told Woodard that he could keep the computer and phone, this is irrelevant to the question of probable cause. The League's legal department provides only legal advice to municipal employees and is not a government entity authorized to issue any form of binding opinion. Even if the League had the ability to issue binding opinions, Woodard could not rely upon them in the face of a criminal statute prohibiting his conduct. *Ex parte Tuscaloosa*, 770 So. 2d 602, 605 (Ala. 2000).

Here, there is no dispute that Woodard remained in possession of property of the Town of Oakman. Wilson was aware that Woodard remained in possession of Town property but refused to return it. These facts alone are sufficient to establish probable cause, and the fact that Woodard asked a lawyer for an opinion on whether he needed to return it is irrelevant with regard to the existence of probable cause. Summary judgment is due to be granted on the theft claim.

## C.    Section 1983 Conspiracy Claims

Phillips has stated a § 1983 conspiracy claim against Todd and Wilson, alleging that Todd, Welch, and Wilson agreed to have him arrested without probable cause.

---

[15] The Court notes that Woodard also argues: "Wilson knew that Woodard had a right to keep his equipment until a Due Process hearing had been completed." (Doc. 209 at 7). However, the citations refer to either excluded evidence (the affidavits, see part III(B), *supra*) or cites to the record that are not relevant to the allegation. The Court does not consider empty allegations as evidence against summary judgment. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

(Doc. 113 ¶ 32). Woodard alleges that Wilson agreed with Welch to sign sham complaints for his arrest, thereby conspiring to arrest him without probable cause. (Doc. 113 ¶ 21). Both Defendants have now moved for summary judgment on these claims. (Docs. 194, 200). For the reasons stated below, summary judgment on the conspiracy claims is due to be granted.

A plaintiff states a § 1983 conspiracy claim by "showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citing *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)). In order to show an underlying denial of constitutional rights, "the plaintiff must prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (quoting *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990).

A conspiracy exists if conspirators "'reached an understanding to deny the plaintiff's rights.'" *Myers v. Bowman*, 713 F.3d 1319, 1332 (11th Cir. 2013)(quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008). In this regard, "the linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Board of County Com'rs of Alachua County, Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992). The plaintiff need not show a "smoking gun" to show a conspiracy but must provide

"some evidence of agreement between the defendants." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-1284 (11th Cir. 2002). Plaintiffs may prove a conspiracy through circumstantial evidence. *American Federation of Labor and Congress of Industrial Organizations v. City of Miami, Fla.*, 637 F.3d 1178, 1191 (11th Cir. 2011).

Todd and Wilson are entitled to summary judgment on Phillips's pending conspiracy claims because the Court has determined, as noted above, that there was no underlying violation of his constitutional rights. Phillips was arrested based on probable cause, and therefore Todd and Wilson did not violate his constitutional rights. Summary judgment is also due to be granted on Woodard's conspiracy claim that Wilson conspired with Welch to arrest Woodard for theft. As with Phillips's claims, there was probable cause.  Since there was probable cause, there is no underlying violation, and thus summary judgment is due to be granted.

Finally, the Court must consider Woodard's conspiracy claims alleging that Wilson conspired with Welch to arrest Woodard for disorderly conduct and obstruction of government operations. The Court finds no evidence that Wilson and Welch agreed to arrest Woodard without probable cause.

Although agreement can be inferred, Woodard cites no evidence that can provide that inference. Indeed, much of the evidence Woodard cites argues against

agreement. For example, he cites generally to portions of Wilson's brief where Wilson states that neither Todd nor Welch pressured him to issue any complaints. (Doc. 209 at 8; Doc. 190-8 at 302-303).

In support of a conspiracy, Woodard relies "significantly on the audio recordings provided by Defendant John Wilson." (Doc. 209 at 26). This refers to "Plaintiffs' Supplemental Production of Document[s] #5." (Doc. 209-5). Instead of pointing to specific passages in this document as evidence of agreement, Woodard relies generally on the entire document to provide sufficient evidence. (Doc. 209 at 26-27).

This document provides no evidence of any agreement to violate Woodard's rights. Although the exact date is uncertain, the conversation occurred after the arrests as they were proceeding in the criminal justice system. (Doc. 209-5 at 18-22). Much of the conversation discusses how the subsequent civil lawsuits are impacting the Town generally. At one point, Wilson does state that he will recommend prosecuting the cases. (*Id.* at 28). Welch neither tells Wilson that he must make this recommendation nor implies that he agreed in the past to bring any charges without probable cause. (*Id.*). Some portions of this conversation are even helpful to Wilson, such as when Wilson indicates that he makes arrests or seizures when he believes that

he has probable cause. (*Id.* at 9).

Plaintiffs provide no other evidence suggesting an agreement to arrest Woodard on charges of disorderly conduct and obstruction of government operations without probable cause. Thus, Wilson's motion for summary judgment on the conspiracy claim is due to be granted.

### D. State Law Claims

In addition to their Federal claims, Plaintiffs pursue state law claims against the Defendants. Defendants have moved for summary judgment with regard to these claims. The Court must determine whether it should retain subject matter jurisdiction over these state law claims after its dismissal of most of the Federal claims (Doc. 88) before addressing Defendants' motions for summary judgment on those claims.

### i.    Supplemental Jurisdiction

"Federal courts are courts of limited jurisdiction," and the Court's analysis must begin by considering whether there is subject matter jurisdiction over the remaining state law claims. *Jackson-Platts v. General Elec. Capital Corp.*, - - - F.3d - - - -, 2013 WL 4463006, *4 (11th Cir. 2013). This case implicates the Court's supplemental jurisdiction, codified at 28 U.S.C. § 1367 ("§ 1367"). "The statute reflects a dichotomy between a district court's power to exercise supplemental

jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c)." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006).

Supplemental jurisdiction entails a two-step inquiry where the Court must first determine whether it *can* exercise its supplemental jurisdiction and then whether it *should* exercise that jurisdiction. *See Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 n. 7 (11th Cir. 2012) (noting the different standards of review for these aspects of supplemental jurisdiction). Section 1367(a) provides the power of supplemental jurisdiction only when the claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). For the Court to have the power to exercise supplemental jurisdiction, the claims must "'derive from a common nucleus of operative fact.'" *Upper Chattahoochee Riverkeeper Fund, Inc.*, 701 F.3d at 679 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966)). If the Court has the power to exercise supplemental jurisdiction as specified in § 1367(a), it must nonetheless consider § 1367(c) to determine whether jurisdiction over the state claim is appropriate. *See Parker*, 468 F.3d at 743.

Woodard has a state law wrongful termination claim against the Town. (Doc. 87 at 41). Woodard also has state law malicious prosecution claims pending against

Welch and Wilson.  (Doc. 87 at 39). Phillips has state law malicious prosecution claims against Welch, Todd, and Wilson. (Doc. 87 at 39). Smith has a state law malicious prosecution claim against Welch. (Doc. 87 at 39). The Court will address whether it has supplemental jurisdiction as to each claim.

### a.    Due Process Claim

Woodard contends that the Town of Oakman denied him state law due process by not allowing him a pre-termination hearing as required by Alabama law.  (Doc. 113 ¶ 20).  Woodard's claim is based on an Alabama statute requiring a municipality to "provide a predisciplinary hearing prior to the suspension or termination of its law enforcement officers." Ala. Code § 11-43-230(a).  In opposing the Town's motion for summary judgment, Woodard argues that he was constructively terminated on July 15, 2010, prior to any hearing on his termination.  (Doc. 209 at 4).  Woodard also challenges the sufficiency of the hearing procedures and the finality of his resignation as police chief. (Doc. 209 at 31-32).

The Court lacks the power to exercise jurisdiction over Woodard's claim because it lacks a common nucleus of operative fact with the underlying Federal causes of action. "The test is not whether the same case or controversy is 'implicated.' The test is whether the claims asserted 'derive from a common nucleus

of operative fact.'" *Upper Chattahoochee Riverkeeper Fund, Inc.*, 701 F.3d at 679 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966)). The Eleventh Circuit has stated that courts "take the nucleus of facts on which the federal question claims are based and compare it to the nucleus of facts on which the state law claims are based." *Id.* The comparison "is not a results-oriented analysis, but a fact-oriented one." *Id.*

Woodard's Federal claims under § 1983 involve his arrest for charges of obstruction of government operations, theft of property, and disorderly conduct on August 27, 2010. (Doc. 189 at 3-4). Specifically, Woodard contends each arrest lacked probable cause and resulted from a conspiracy between Welch and Wilson. (Doc. 113 ¶ 21). Thus, the underlying facts of the Federal claim involve the circumstances surrounding the issuance and execution of the arrest warrants.

In contrast, Woodard's state law due process claim of wrongful discharge involves entirely different facts. In response to the Town's motion for summary judgment, Woodard argues that he was constructively terminated on July 15, 2010, when the locks were changed on his office door. (Doc. 209 at 4-5). Additionally, Woodard argues that he was not able to call witnesses after receiving written notice of the basis for termination. (Doc. 209 at 5). The state claim thus requires the fact-

finder to inquire as to the circumstances surrounding Woodard's termination and his due process hearing.   Woodard also argues that his arrest occurred after his termination as an effort to discredit him for his public criticisms of Todd. (Doc. 113 ¶ 21). This is insufficient to satisfy the case or controversy requirement of § 1367(a).[16]

When the Court declines to exercise supplemental jurisdiction in a case that has been removed from state court, it must remand that case to the state court. *See Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001) ("If the district court does decline to exercise supplemental jurisdiction, these claims shall be remanded to state court, rather than dismissed, because this case was originally filed in state court and removed to federal court pursuant to 28 U.S.C. § 1441."). Woodard, along with the other Plaintiffs, initially filed his claim in state court in Walker County, Alabama, and it was removed by Defendants.  (Doc. 1). Thus, the Court will remand the claim to the Circuit Court of Walker County for further proceedings without deciding

---

[16] Even if the Court had jurisdiction under § 1367(a), it would nonetheless exercise its discretion and decline to exercise supplemental jurisdiction because Woodard raises a novel issue of state law under § 1367(c). *See Parker*, 468 F.3d at 743 ("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims."). Plaintiff argues that he was constructively terminated when the locks were changed on his office door. (Doc. 209 at 31). Although this theory has been applied to some other termination statutes, it has not been applied to the statute upon which Woodard relies. *See Keystone Foods v. Meeks*, 662 So. 2d 235, 237 (Ala. 1995) (applying constructive termination to a wrongful discharge claim). The Alabama courts would be best-positioned to determine whether the word "termination" in § 11-43-230(a) also includes a "constructive termination." Discovery is now complete, and the Alabama court need only try the case and decide the novel issue of state law.

whether the Town is entitled to summary judgment on the due process claim.

### b.    Malicious Prosecution Claims against Welch

Woodard, Phillips, and Smith each pursue state law malicious prosecution claims against Welch. (Doc. 87 at 39). Welch has moved for summary judgment. (Docs. 196, 197, 198). Before addressing these motions, the Court must determine if it continues to possess supplemental jurisdiction over such claims.

As noted above, the Court must first consider whether there is a common nucleus of operative facts in both the state claim and the remaining Federal claims. *Parker*, 468 F.3d at 743. Smith has no Federal claim pending. Instead, Smith contends under a state law claim of malicious prosecution that his arrest on September 11, 2010, was based on a decision to deny Welch immediate access to a former magistrate's records. (Doc. 209 at 20). To determine whether Smith was arrested without probable cause, the Court would have to consider his arrest, which resulted from completely different facts than the arrests of Phillips and Woodard. (Doc. 113 ¶¶ 21, 29, 34).  It is not enough that Smith was also arrested by Wilson on a warrant issued by Welch. The warrant to arrest Smith was issued based on a different nucleus of operative facts.[17] Thus, the claim is outside the subject matter jurisdiction of the Court and is

---

[17] The complaint for Smith's arrest alleged that he told the Manager of the Oakman Water Works not to turn over funds or documents to the municipal court system. (Doc. 190-12 at 2).

remanded to state court. *See Lewis*, 260 F.3d at 1267.

However, Phillips and Woodard state malicious prosecution claims against Welch that do derive from the same nucleus of operative facts as those of the continuing Federal claims. Woodard alleges that his arrests were without probable cause and the result of a conspiracy. (Doc. 113 ¶¶ 21, 22). The same facts that give rise to the Federal § 1983 malicious prosecution and conspiracy claims against Wilson underlie the state law malicious prosecution claims against Welch. Phillips alleges that Welch had him arrested based on a "sham complaint" that was a result of a conspiracy. (Doc. 113 ¶¶ 31, 32, 33).

Nonetheless, the Court retains discretion to decline jurisdiction over supplemental claims in a number of cases, including when "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c). "'As a practical matter, the district court is in the best position to weigh the competing interests . . . in deciding whether it is appropriate to exercise supplemental jurisdiction.'" *Utopia Provider Systems, Inc. v. Pro-Med Clinical Systems, L.L.C.*, 596 F.3d 1313, 1328 (11th Cir. 2010) (quoting *Lucero v. Trosch*, 121 F.3d 591, 598 (11th Cir. 1997)). "Any one of the section

---

Smith's complaint states that the interference with government operations charge was based solely on statements made to the chairman of the water board that fund had been misappropriated. (Doc. 113 ¶ 34). Plaintiff Smith also suggests that his arrest warrant may have been signed by someone other than Wilson, but this argument was not made as to any of the other Defendants. (Doc. 209 at 21 n. 3).

1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." *Parker*, 468 F.3d at 743.

The Court declines to exercise jurisdiction over the claims of Woodard and Phillips because the Alabama courts should clarify the proper standard of judicial immunity for magistrate judges. Defendant Welch argues as a threshold matter that he is entitled to absolute judicial immunity for his actions as magistrate. (Doc. 196 at 3, Doc. 197 at 4-5, Doc. 198 at 5). The scope of a magistrate's immunity presents a novel question of state law that the Alabama courts are best-positioned to resolve.

The Alabama Supreme Court has previously stated that "if a judge of a court of limited jurisdiction has subject matter jurisdiction and a colorable claim of personal jurisdiction, he is immune so long as he acts in good faith." *Bahakel v. Tate*, 503 So.2d 837, 839 (Ala. 1987). The Supreme Court applied this rule to a magistrate. *Id*. However, a more recent case has appeared to apply absolute immunity to a magistrate without a showing of good faith. *Ex parte City of Greensboro*, 948 So.2d 540, 542-543 (noting that judges receive absolute immunity when acting in an official capacity). The *Bahakel* decision has not been expressly overruled, and it is unclear which standard should govern this case.

Welch argues on the issue of immunity only that he is entitled to absolute

immunity. (Doc. 196-1 at 5; Doc. 197-1 at 5; Doc. 198-1 at 5). Given the ambiguity on whether absolute immunity actually applies to magistrates, the Alabama courts should be given the opportunity to decide whether *Bahakel* has been overruled. Discovery is complete, and the state courts need only try the case and decide this novel issue of state law. The Court in its discretion declines to exercise supplemental jurisdiction.[18]

As with the wrongful termination claim and Smith's malicious prosecution claim, the Court will remand Woodard's and Phillips's malicious prosecution claims against Welch to state court.  *See Lewis*, 260 F.3d. at 1267 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).

### c.    Malicious Prosecution Claims Against Wilson and Todd

Woodard and Phillips also have pending state law malicious prosecution claims against Wilson and Todd. (Doc. 87 at 39). The court will exercise its supplemental jurisdiction over these state law claims based on the standard described above.

Phillips alleges that Wilson signed a complaint for his arrest lacking in probable cause as a result of a conspiracy among the Defendants. (Doc. 113 ¶¶ 29, 31). Woodard makes similar claims regarding his arrest.  (*Id.* ¶¶ 21, 22, 23, 24, 44).

---

[18] The Court notes that Plaintiffs also contend that Defendant Welch failed to receive proper certification to act as a magistrate, and this deprives him of judicial immunity. (Doc. 209 at 8-9). This may also present a novel issue of state law best left to the Alabama courts on the question of immunity for magistrates.

Plaintiffs use essentially the same facts to support the Federal and state law claims.

The Court will exercise supplemental jurisdiction on these claims because the novel questions of immunity present in the claims against Welch are absent here. Thus, the Court will consider and rule on both motions for summary judgment on these claims.

### ii.    Summary Judgment on Malicious Prosecution Claims

The Court now considers the motions for summary judgment on the malicious prosecution claims against Todd and Wilson.

The elements of a state law malicious prosecution claim are: "(1) institution or continuation of an original judicial proceeding, either civil or criminal; (2) by or at the instance of the defendant; (3) termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) injury or damage as the result of the prosecution's complaint." *Kroger Co. v. Puckett*, 351 So. 2d 582, 585 (Ala. Civ. App. 1977). Probable cause is defined as "such a state of facts in the mind of the prosecutor that would lead a man of ordinary caution or prudence to believe or entertain an honest or strong suspicion that the person arrested is guilty." *Myles v. Screentech, Inc.*, 98 So. 3d 563, 568 (Ala. Civ. App. 2012) (internal quotations omitted).

Todd and Wilson are entitled to summary judgment on the malicious prosecution claim by Phillips. Phillips admitted that he voided a traffic ticket that had already been issued to a driver. (Doc. 209 at 11). He also cites to evidence noting that Wilson investigated the matter, discovered the voided ticket, and discovered that it had not been sworn before a magistrate. (Doc. 209 at 8; Doc. 190-8 at 300). Phillips does not cite any statutory authority for voiding a ticket. Instead, Phillips raises only that an employee of the Alabama League of Municipalities told him that he had properly voided the ticket.  This is not a viable defense to a crime in Alabama. *Ex parte Tuscaloosa*, 770 So. 2d 602, 605 (Ala. 2000).

On this same basis, Wilson is entitled to summary judgment on the malicious prosecution claim by Woodard for his arrest on theft charges. As previously established, Woodard admitted that he kept Town property after he was asked to return the property in his deposition, and he does not cite evidence denying it now in his opposition to summary judgment. (Doc. 190-1 at 142). Wilson investigated that matter. (Doc. 190-8 at 300). This provided Wilson with an honest and reasonable belief that Woodard was guilty, and thus he is entitled to summary judgment because he had probable cause to arrest Woodard for theft.

However, the Court denies Wilson's motion for summary judgment on

Woodard's arrests for disorderly conduct and interference with government operations. Wilson argues that Woodard fails to establish either probable cause or malice. (Doc. 200 at 24-26).

The Alabama Supreme Court has held that a grand jury indictment does not defeat a malicious prosecution action when the indictment was secured by "fraud, subornation, suppression of testimony, or other like misconduct." *National Security Fire & Casualty Co. v. Bowen*, 447 So. 2d 133, 140 (Ala. 1983). Woodard's claim does not involve a grand jury, but Woodard has alleged facts sufficient to find either fraud or similar misconduct. Thus, a jury could determine that Wilson lied to Magistrate Welch in order to procure the arrest warrants for disorderly conduct and interference with government operations without any probable cause.

If the jury were to find a lack of probable cause, it could then infer malice. *AAA Employment, Inc. v. Weed*, 457 So. 2d 428, 431 (Ala. Civ. App. 1984). Thus, a reasonable jury could determine that Defendant Wilson acted without probable cause and with malice in arresting Woodard on the disorderly conduct and interference with government operations claims.   Summary judgment on these claims is due to be denied.

## V.    Conclusion

For the reasons outlined above, Defendants' motions for summary judgment will be granted in part and denied in part.  A separate order will be entered.

Done this <u>10th</u> day of <u>September 2013</u>.

_____

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

174256